This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Adam Hardin ("Hardin"), appeals his conviction from the Wadsworth Municipal Court. We affirm.
 I.
On October 25, 2000, the Ohio State Highway Patrol arrested Hardin for operating a motor vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1). After a jury trial, Hardin was found guilty of the offense. The trial court sentenced him to 30 days in jail,[1] suspended his license for 180 days and fined him $250.
This appeal followed.
 II.
Assignment of Error No. 1:
 DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL BECAUSE THE TRIAL COURT ALLOWED THE BLOOD ALCOHOL CONCENTRATION INTO EVIDENCE AND DENIED [DEFENDANT] THE RIGHT TO USE THE RESULTS IN HIS DEFENSE.
In his first assignment of error, Hardin argues that the trial court erred in allowing the admission of evidence regarding the results of his Breathalyzer test.[2]
The admission or exclusion of evidence is within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court should not disturb the trial court's determination unless the trial court abused its discretion. Statev. Hymore (1967), 9 Ohio St.2d 122, 128. The term "abuse of discretion" implies more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
The Supreme Court of Ohio has held:
 [w]hen introducing a legally obtained breathalyzer test result below .10 into evidence in prosecutions under R.C. 4511.19(A)(1),[3] the state must present expert testimony to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol.
State v. French (1995), 72 Ohio St.3d 446, paragraph two of the syllabus. This court has held that the trial court commits "reversible error in admitting the breath test results without expert testimony explaining its significance to the jury." State v. Wharton (May 9, 2001), Wayne App. No. 00CA0054, unreported at 4.
In the present case, the prosecutor presented testimony from Sergeant Sheppard, who administered the breathalyzer test. Sergeant Sheppard testified that the result of Hardin's breathalyzer test was .096. The trial court overruled the defense counsel's objection to the admission of this evidence. The record reflects that the prosecution did not present any testimony from an expert witness regarding the results of Hardin's breathalyzer test. Accordingly, the trial court erred in admitting the results of a breathalyzer test that was below the legal limit of .10 without the testimony of an expert witness to explain the test results to the jury. Id.
We next consider whether the error was harmless. Crim.R. 52(A) provides that "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to hold error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Chapman v. California (1967),386 U.S. 18, 17 L.Ed.2d 705; State v. Lytle (1976), 48 Ohio St.2d 391,403, vacated on other grounds, (1978), 438 U.S. 910, 57 L.Ed.2d 1154. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams
(1983), 6 Ohio St.3d 281, 290.
"Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992), 65 Ohio St.3d 483, 485, citing Lytle, 48 Ohio St.2d at paragraph three of the syllabus. A reviewing court, therefore, when determining whether an error in the admission of evidence is harmless, must find there is no reasonable probability that the evidence may have contributed to the defendant's conviction. State v. DeMarco (1987), 31 Ohio St.3d 191, 195.
In the present case, after a review of the entire record, we find that any prejudice that may have resulted from the admission of the results of Hardin's breathalyzer test constitutes harmless error. Trooper Sankoe, the arresting officer, testified that on October 25, 2000, at approximately 1:30 a.m., he observed a vehicle continually moving back and forth between the edge line to the centerline for approximately one half mile. After the vehicle made a wide right hand turn and crossed the centerline, Trooper Sankoe activated his lights and stopped the vehicle.
After approaching the vehicle, Trooper Sankoe smelled a strong odor of alcohol coming from Hardin's breath, noticed that Hardin's eyes were glassy and observed that Hardin was disoriented with his surroundings. Hardin admitted that he had consumed a couple rum and Cokes and a Bush tall boy (16 ounces of beer) earlier that evening. Hardin had problems producing his license and registration and putting on a tee shirt. After exiting his vehicle, Hardin asked the trooper if it was snowing. Trooper Sankoe informed him that it was not snowing and noted this as an example of Hardin's difficulty observing his surroundings.
Trooper Sankoe testified that he had been trained on administering field sobriety tests. He stated that he knew how to properly administer the tests and that he did properly administer the horizontal gaze nystagmus test, the walk and turn test and the one-legged stand test. Trooper Sankoe observed several indicators during Hardin's poor performance of these tests. Trooper Sankoe testified that Hardin was not able to perform divided attention skills and had difficulty following instructions. Based on all of his observations of Hardin, Trooper Sankoe arrested Hardin for operating a motor vehicle while intoxicated and transported him to the station.
The prosecution also played a videotape recording of Hardin's stop, field sobriety tests and arrest. The parties stipulated that the videotape was recorded from a camera on the trooper's cruiser. Trooper Sankoe testified that the camera on the cruiser automatically begins recording when the flashing lights are activated on his cruiser.
Apart from the disputed evidence, Hardin's erratic driving, odor of alcohol, glassy eyes, disorientation with his surroundings, difficulty performing divided attention skills and poor performance on the field sobriety tests constituted overwhelming evidence of his guilt. Having found that there is no reasonable probability that the evidence of Hardin's test result contributed to his conviction we overrule the first assignment of error. See DeMarco, 31 Ohio St.3d at 195.
 III.
Assignment of Error No. 2:
 THE COURT AND JURY ERRED IN CONVICTING DEFENDANT, BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, Hardin argues that his conviction was against the manifest weight of the evidence and that his conviction was not supported with sufficient evidence. We disagree.
 Manifest Weight When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
In the present case, Hardin was convicted of driving under the influence. R.C. 4511.19(A)(1) provides that "[n]o person shall operate any vehicle * * * if * * * [t]he person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]"
The prosecution presented evidence from three witness and played a videotape recording of Hardin's stop, field sobriety tests and arrest. The trial began with the videotaped testimony of Amy Sulin.[4] Sulin testified that she and Hardin had been dating for a short time before his arrest. On October 24, 2000, Sulin was a barmaid at the Starboard Side Café. That evening, she served four or five rum and Cokes to Hardin over approximately two hours. Sulin stated that she placed a shot to a shot and one-half of rum in each drink.
Hardin and his friend, Timothy Childers ("Childers"), picked Sulin up after work. Hardin and Sulin returned to Sulin's apartment and prepared to meet with friends. While driving to a friend's house, a trooper stopped Hardin. The trooper questioned Hardin and performed several field sobriety tests. The trooper arrested Hardin and transported both Hardin and Sulin to the police station.
On cross-examination, Sulin testified that she may have served Hardin six alcoholic drinks. She admitted that these six drinks could have contained approximately nine ounces of rum. Sulin stated that a person should not drive after consuming nine ounces of rum. Sulin's testimony described Hardin's driving. Specifically, Hardin made a very wide right turn and crossed completely over the double yellow lines. Sulin testified that the trooper's lights were not flashing at the time Hardin crossed the double yellow lines.
On October 25, 2000, Trooper Sankoe was in the process of completing his three-month training period. Sergeant Sheppard, a field training officer, rode along to observe and critique Trooper Sankoe during his training period. Trooper Sankoe's testimony was reviewed in our discussion of the first assignment of error.
Sergeant Sheppard testified that he observed Hardin's vehicle swerve in a continual motion between the lane lines and cross completely over the double yellow lines after a wide right turn. While Trooper Sankoe conducted the field sobriety tests, Sergeant Sheppard controlled the traffic in the area. Sergeant Sheppard stated that he had been involved in over 500 DUI arrests. Based on his experience, he opined that alcohol affected Hardin's ability to control his vehicle.
The defense presented evidence from Childers and Hardin. Childers testified that on the evening of October 24, 2000, Sulin served him three or four alcoholic drinks over approximately two hours. In that same time frame, Sulin served Hardin five to six alcoholic drinks. Childers limited his alcohol intake because he was driving that evening. Childers and Hardin left the bar and went to Sulin's apartment. While they waited for Sulin's work shift to end, Childers watched television and Hardin slept. Neither Childers nor Hardin consumed alcohol while at Sulin's apartment.
Later that evening, Childers drove Hardin to pick up Sulin from work. He drove both Hardin and Sulin back to Sulin's apartment and then made plans to meet them later at a friend's house. Childers testified that Hardin did not appear intoxicated.
Hardin testified that he consumed five alcoholic drinks at the bar. After returning to Sulin's apartment with Childers, Hardin slept for several hours. Hardin awoke when Sulin called for a ride home from work. He was hot and sweaty from his nap. On cross-examination, Hardin stated that he could feel the alcohol in his system when he woke up from the nap.
Before leaving for his friend's house, Hardin stated "I thought about driving and whether I should or shouldn't. And I felt okay to drive." Hardin was "trying to sober up" before getting behind the wheel of his car. He testified that he liked driving and that he knows when he has had too much to drink. Hardin turned on the heater in the car for Sulin. After cracking the windows, Hardin decided to remove his tee shirt while driving.
Hardin testified that he noticed the trooper's cruiser when it was eight car lengths behind his vehicle. The trooper's presence made him very nervous. Hardin described continually looking in his rear view mirror at the cruiser. He stated that the flashing lights of he cruiser distracted him and caused the wide right hand turn. On cross-examination, he was unable to explain why Sulin, Trooper Sankoe and Sergeant Sheppard testified that the flashing lights came on after his wide right turn.
After Trooper Sankoe stopped him, Hardin stated that he attempted to make casual conversation with the trooper. He recalled being able to perform all of the field sobriety tests. Hardin felt that any possible impairment in his driving or performance on the tests was a result of being tired.
Upon a careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Hardin of driving under the influence. We cannot find that the evidence weighs heavily in favor of the defendant such that a new trial must be ordered.
 Sufficiency A defendant who is tried before a jury "may not challenge the sufficiency of the evidence on appeal unless he moved for acquittal at trial." State v. Liggins (Aug. 18, 1999), Summit. App. No. 19362, unreported, at 3. In the present case, Hardin failed to move for acquittal at trial. Accordingly, he has waived any challenge to the sufficiency of the evidence.
Hardin's second assignment of error is overruled.
 IV.
Having overruled both of Hardin's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., CARR, J. CONCUR.
[1] The record reflects that the trial court suspended 27 days of Hardin's jail sentence.
[2] On appeal, Hardin argues that he filed a motion in limine requesting the trial court exclude the results of his BAC test unless a jury instruction explaining the legal limit was given to the jury. Hardin's brief states that the trial court denied his motion and "[t]he trial court went one step further by allowing the admission of the breathalyzer result but did not allow any discussion of the BAC."
[3] We note that the former version R.C. 4511.19(D), which was in effect at the time of French, is substantially similar to the current version of R.C. 4511.19(D)(2). The current version of R.C. 4511.19(D)(2) provides that results of a breathalyzer below the legal limit "may be considered with other competent evidence in determining the guilt or innocence of the defendant" charged under R.C. 4511.19(A)(1).
[4] The record reflects that Sulin's testimony was videotaped before trial because she no longer resides in Ohio.